873 So.2d 909 (2004)
STATE of Louisiana, Appellee
v.
Dewayne Terrance WEAVER, Appellant.
No. 38,322-KA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*911 Jacqueline Scott, Bossier City, for Appellant.
Robert W. Levy, District Attorney, Clifford R. Strider, III, Stephen K. Hearn, Jr. Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
MOORE, J.
The defendant was tried by a jury, convicted of armed robbery and sentenced to serve 15 years imprisonment at hard labor. He now appeals alleging seven assignments of error.[1] For the following reasons, we affirm the defendant's conviction, but vacate the sentence and remand for re-sentencing.

FACTS
Jessica McDonald and her boyfriend, Jeff Sillinger, had just parked outside her apartment at Village Green Apartments in Ruston and had begun unloading items they had purchased from Wal-Mart when Jessica observed a dark-colored Geo drive past them. Moments later, they were approached by three men wearing ski masks and gloves. The men cursed and shouted profanities at the couple while exclaiming this was a robbery and demanded their money. One of the men held a silver revolver against Jessica's head. Among the items taken from the couple were Jessica's purse containing her cell phone, credit cards, keys and some cash and Jeff's wallet. Another assailant took a 12-pack of beer the couple had just purchased from Wal-Mart. The three men then fled.
Jessica reported the robbery to authorities. Although she could not see their faces completely, she was able to identify the assailants as three black males. She also noted that, moments before the robbery, *912 a dark-colored Geo passed slowly by the couple as they got out of her car.
Following an investigation, defendant was arrested after one of the suspects, Kenton Cottingham, implicated him in the robbery. Police investigated Cottingham after he made several phone calls from the victim's stolen cell phone, some of which were traced to his girlfriend. The Geo was traced to Elbonie Washington, defendant's girlfriend, who told police that she had loaned her black Geo Storm to defendant the afternoon of the robbery. Defendant named Cottingham and Olatunji Williams, aka "Baby," as his accomplices.
All three were charged with armed robbery in a single bill of information. Williams subsequently pled guilty to the offense, and Cottingham was acquitted in a jury trial. After a trial by jury, the defendant was convicted as charged for armed robbery. He was sentenced to serve 15 years imprisonment at hard labor. He appeals.

DISCUSSION
Assignment of Error Number Six: The evidence presented by the state was insufficient to support defendant's conviction for Armed Robbery.
The defendant contends that the state failed to prove his identity as a perpetrator of the armed robbery. Jessica McDonald was unable to identify the men who robbed her; her boyfriend, Jeff Sillinger, did not testify. Defendant included within the sufficiency argument other specific errors related to the admissibility of evidence, such as statements obtained by police from Cottingham and the admissibility of defendant's confession, but these are treated elsewhere in this opinion under their specific assignments.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider a sufficiency of the evidence argument in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*913 This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64; State v. Long, 36,167 (La.App.2d Cir.10/30/02), 830 So.2d 552.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
At trial Jessica McDonald testified that the robbers demanded and took her purse and Jeff Sillinger's wallet while one of the assailants pointed a revolver at her head at close range. Although Ms. McDonald could not see their faces, she was able to discern through openings in the ski masks that the assailants were black males. She also noticed a dark-colored car, which she identified as a Geo, drive slowly by just moments before the robbery. Police subsequently learned that the defendant's girlfriend, Elbonie Washington, owned a black 1991 Geo Storm. Ms. Washington testified at trial that the defendant borrowed her car around 5:00 p.m. on the date of the robbery. When he returned briefly in the car between 7:00 and 8:00 p.m., she asked him what he had been doing, he replied, "It's best that I didn't know."
The revolver used in the robbery was recovered from Cottingham's girlfriend, who was identified after Cottingham made several cell phone calls from Ms. McDonald's stolen cell phone. After the defendant was implicated by Cottingham and brought in for questioning, Lieutenant Darrell Newsom testified that the defendant confessed to the robbery, and an audio tape of the confession was made. The tape of the confession was played for the jury. Trooper First Class Gregory Pleasant was present during the taped confession and testified that the defendant was not coerced into giving a statement.
The jury obviously did not find the testimony of defendant's alibi witnesses to be credible.
Viewing the evidence above in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime of armed robbery proven beyond a reasonable doubt in this instance. Accordingly, this assignment of error is therefore without merit.
Assignment of Error Number Seven: The trial court erred by allowing the State of Louisiana to introduce defendant's statements about the robbery in evidence, including an audiotape, a videotape and a typewritten transcript as well as other statements attributed to the defendant by police officers.
The defendant admits he filed no motion to suppress, but argues that the admission of his inculpatory statements into evidence should be reviewed as part of the "record" for sufficiency of evidence. He asserts that the statements were obtained in violation of his constitutional rights under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
*914 An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Bosley, supra.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Jackson, 381 So.2d 485 (La.1980); State v. Roddy, (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Roddy, supra; State v. Walker, 28,577 (La.App.2d Cir.10/4/96), 681 So.2d 1023.
The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation. State v. Payne, XXXX-XXXX (La.12/4/02), 833 So.2d 927, citing Edwards v. Arizona, supra, 451 U.S. at 485-486, 101 S.Ct. at 1885. In addition, once a suspect in custody expresses a desire, at any stage in the process, to deal with the police only through counsel, all questioning must cease, and the accused may not be subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel. State v. Loyd, 35,637 (La.App.2d Cir.2/27/02), 810 So.2d 1214, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 779, citing Edwards v. Arizona, supra; Miranda, supra.
The admissibility of a confession is a question for the trial court whose conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Benoit, 440 So.2d 129 (La. 1983); State v. Roddy, supra; State v. Dailey, 607 So.2d 904 (La.App. 2d Cir. 1992), citing State v. Jackson, supra. We place great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Roddy, supra; State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082.
Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Henderson, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240; State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.), writ denied, 586 So.2d 545(1991).
The defendant complains of an alleged error that was not objected to at the time of occurrence. Also, there is no ruling from which the defendant can complain. Thus, this alleged error cannot be availed of after verdict. La. C. Cr. P. art. 841; State v. Bosley, supra.
Nevertheless, even if we assume the defendant timely raised an objection, this claim is clearly without merit. The police twice advised the defendant of his Miranda rights before taking the recorded statement. When the defendant requested an attorney, the tape was turned off. When the recording was resumed, defendant acknowledged that he had changed his mind and no longer wanted an attorney. He stated that he was not coerced and that police did not try to convince him he did not need an attorney. At trial, Lt. Newsom testified that during the time the tape was cut off, officers were leaving the room, but then the defendant stated: "F*ck it, we're caught, I'll talk." Hence, we conclude that the questioning immediately ceased upon the defendant's request for an attorney, and it did not resume until the defendant initiated further communication and validly waived his earlier request for counsel. See State v. Loyd, supra.
*915 This assignment is therefore without merit.
Assignment of Error Number One: The trial court erred in granting the State's Motion in Limine prohibiting defendant from introducing evidence of the "Not Guilty" verdict of the co-defendant Kenton Cottingham at the defendant's trial.
The state filed a motion in limine to prohibit the defendant from making any reference to the acquittal of co-defendant Kenton Cottingham. The court noted that there are no Louisiana cases on point and reasoned that evidence of Cottingham's acquittal was irrelevant and therefore was inadmissible. The court stated:
I do the weighing and balancing and I consider the fact that there may well have been different evidence, it'smay cause new issues to raise and I don't find it relevant and, if so, I think it would be a waste of time, confuse the Jury, unduly prejudice so I'm gonna grant the motion in limine. The defense asked that their objection be noted for the record.
On appeal, the defendant argues that the ruling violated his Sixth Amendment right to present a defense. He claims that he was unable to call Kenton Cottingham and question him as to the defense's theory of the case. He further argues that he was entitled to present documents or references to public records which were relevant to his defense.
We conclude that the trial court was correct and did not abuse its discretion when it granted the motion in limine prohibiting the defense from introducing evidence of Cottingham's acquittal. Although there are no Louisiana cases regarding introducing evidence of a co-defendant's acquittal, there are many cases from other states that support the trial court's ruling.
In Garner v. State of Mississippi, XXXX-XXXXX (Miss.App.10/14/03), 856 So.2d 729, the state successfully pursued a motion in limine to exclude any evidence that a co-defendant had been acquitted of the same robbery in an earlier trial. On appeal, the defense argued that the trial court's ruling prevented it from using the acquittal to attack the credibility of the victim, who had positively identified her assailants at each trial. The court of appeal concluded that the trial court did not err in excluding this evidence, stating:
The jury was charged with trying a particular case, sitting as finder of fact, is the sole judge of the credibility of the witnesses presented at trial. (Citations omitted). A jury trying a criminal case normally must sort through substantial amounts of evidence, some portions tending to indicate guilt and other portions tending to exonerate the defendant. In that situation, it would be essentially impossible to draw a direct link between the verdict of acquittal and any particular aspect of the proof. Even if it is assumed that the prior verdict speaks, in some indirect way, to that jury's assessment of the victim's credibility, it would be improper to afford the subsequent jury that information. To do that would, in effect, install the earlier jury as an advisory body offering its own view as to Smith's credibility and would tend to usurp, or at the very least, improperly influence the deliberations of the jury on issues that are solely within the province of the finders of fact. The trial court did not err in excluding this evidence. (Emphasis added).
The same result was reached in several analogous cases from other states, including State v. Scott, 99-0012 (Iowa 11/16/00), 619 N.W.2d 371 (Evidence of acquittal of one jointly indicted with accused is not admissible on behalf of accused as tending to establish that he also is innocent, and likewise, it is not competent on the trial of one charged with a crime to show that *916 another, separately charged with the same offense, has been acquitted.); Montoya v. State, XX-XX-XXXX CR (Tex.App.-Amarillo Nov. 21, 2000), 65 S.W.3d 111; Rodriquez v. State, 454-55 (Tex.Crim.App.1977), 552 S.W.2d 451 (Generally, the disposition of a case against a co-defendant is inadmissible at trial against another co-defendant.); State v. Martin, 22978 (6/8/03), 77 Conn. App. 818, 827 A.2d 1 (The guilty plea or conviction of a co-defendant or co-conspirator generally is not admissible at trial, and such guilty pleas and convictions are never admissible as substantive evidence of the defendant's guilt.); Torres v. State XX-XX-XXXXX (Texas App.-Hous. 14th Dist. 12/19/02), 92 S.W.3d 911 (Disposition of co-defendant's case is generally not admissible in trial of another co-defendant.). See also, United States v. Sanders, 95 F.3d 449, 454 (6th Cir.1996); United States v. Fernandez-Roque, 703 F.2d 808, 813 (5th Cir.1983).[2]
Based upon our review of these cases and the instant record, we conclude that the trial court did not err in granting the state's motion in limine. Defendant's claims that he was denied his right to present a defense are unsupported on the record. The trial court's ruling did not prevent the defendant from calling the co-defendant as a witness, and defendant advances no "theory of the case" which was foreclosed by this ruling. Assignment of Error Number Two: The trial court erred by not granting the defendant's objections to hearsay references by the prosecutor about the "cell phone," "what Weaver told him," and other remarks to the jury that bolstered the credibility of a state's witness before that credibility was attacked.
In this assignment of error, defendant contends that Tpr. Pleasant and Lt. Newsom both testified for the state using hearsay statements obtained from the questioning of co-defendant Cottingham that implicated Weaver in the crime. Defendant complains that some of the hearsay statements were prejudicial to the defendant because he was unable to call Cottingham as a witness (presumably for cross-examination regarding the alleged statements).
The matters of record indicate that during the direct examination, the prosecutor asked Trp. Pleasant what co-defendant Cottingham told him regarding the robbery. Tpr. Pleasant stated that after questioning Cottingham, they began looking for the defendant. When the state asked Tpr. Pleasant if Cottingham gave any details of the robbery, Tpr. Pleasant responded:
He told whatMr. Cottingham [sic] statement waswas that Mr. Weaver mentioned to him that he had committed a robbery and robbed a.
At this point, the defense objected to hearsay, and the trial court admonished the witness stating: "All right, sir, don't tell what others have said." The state resumed asking whether Cottingham gave any details about a gun, the car, how the people were dressed, how many people were there and if the armed robbery occurred at the Village Green Apartments. Tpr. Pleasant replied he gave none. He said Cottingham mentioned a cell phone, but he did not relate it to the Village Green Apartments.
Defendant contends the following questioning elicited hearsay responses:
Prosecutor: Okay. Who was the first person in this investigation that gave *917 anybody, anyone, any investigator any details of what happened on February 20th at approximately 6:30 or 6:40 at Village Green Apartments?
Tpr. Pleasant: Mr. Weaver was.
Prosecutor: He's the first person that gave you any details?
Tpr. Pleasant: Yes, sir.
Prosecutor: Mr. Cottingham didn't?
Tpr. Pleasant: Well heas I said, he told me what Weaver told him.
Prosecutor: Right, but that didn't involve details.
Tpr. Pleasant: That's right.
No contemporaneous objection was made to this testimony. The state also asked Lt. Newsom about the investigation and, specifically, Weaver's statement:
We informed him (the defendant) that we had talked to another co-defendant by the name of Kenton Cottingham who told us that Dewayne Weaver had told him that he had committed this robbery where a white male was in a parking lot and he stole the man's wallet and a cell phone.
At this time, the defense objected to hearsay, and the trial court sustained the objection. The questioning continued regarding what the defendant related to Lt. Newsom about the case. Lt. Newsom stated that he told the defendant what Cottingham told them. No other contemporaneous objections were made by the defense. Lt. Newsom then related that the defendant admitted his involvement in the robbery together with Cottingham and Olatunji Williams.
Generally, a witness with personal knowledge is allowed to relate what occurred or did not occur in his/her presence, as long as the evidence is relevant and not made inadmissible by the hearsay rule or some other rule of law. La. C.E. arts. 402, 602, 802. "Hearsay" is a statement other than one made by the declarant while testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. See State v. Tate, 25,765 (La.App.2d Cir.2/23/94), 632 So.2d 1213, writ denied, 94-1218 (La.8/23/96), 678 So.2d 33.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Bosley, supra. If an objection is sustained, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied either an admonition to disregard or a mistrial. State v. Michel, 422 So.2d 1115 (La.1982), citing State v. Miles, 402 So.2d 644 (La.1981); State v. Nicholas, 359 So.2d 965 (La.1978).
In this instance, there are no rulings from which the defendant can complain. Our review of the record indicates that when the court admonished Tpr. Pleasant not to state what Cottingham stated, it implicitly sustained the defendant's objection. Defendant's second hearsay objection was also sustained. The defendant complains of alleged errors that were not objected to at the time of occurrence. Thus, these alleged errors cannot be availed of after verdict. La. C. Cr. P. art. 841; State v. Bosley, supra. The defendant neither requested nor was denied an admonition to disregard or a mistrial. He cannot therefore now complain of the alleged errors on appeal. See State v. Michel, supra; State v. Miles, supra; State v. Nicholas, supra.
We also note that the defense was not prohibited from calling Cottingham as a witness.
This assignment is therefore without merit.
*918 Assignment of Error Number Three: The trial court erred by striking portions of the trial testimony from the record at the request of the prosecutor.
The defense's direct examination of defendant's alibi witness, Adrian Nicole Lee, included the following colloquy:
Mr. Johnson: Okay. Are you absolutely certain that you saw Mr. Weaver on this particular day, February 20th, 2001, as you sit here and testify today?
Ms. Lee: Yes, sir.
Mr. Johnson: Why are you certain of that?
Ms. Lee: Because in our conversation he mentioned that his mother was going out of town and his father's birthday was the next day.
Mr. Johnson: Okay.
(By prosecutor)
Mr. Hearn: Your Honor, I'm gonna ask
Mr. Johnson: I'll tender, Your Honor.
Mr. Hearn: I'm gonna ask that the last statement be stricken from the record as a hearsay, I had no opportunity to interject an objection despite the Court's warning.
The Court: All right.
Mr. Johnson: I don'tI don't object to that, Your Honor.
The Court: Sustained.
(By co-prosecutor)
Mr. Strider: Your Honor, can we instruct the Jury what that means?
The Court: Oh, yes. Thank you for reminding me. The last statement I've stricken from the record. That means you're not to give it any consideration or any weight.
The defendant argues that the trial court's striking of this testimony from the record was particularly prejudicial because it had the effect of telling the jury not to consider Ms. Lee's recollections which were part of his alibi defense. The defense contends that there is no basis for the objection. He also argues that motions to strike are not available under Louisiana law, and that the prosecutors' request to strike amounted to a prohibited comment on the evidence.
Assuming, arguendo, that the motion constituted a prohibited comment, we note that the defendant did not object to it at the time of its occurrence. In fact, defense counsel specifically stated that it did not object to the trial court's ruling. Thus, these alleged errors cannot be availed of after verdict. La. C. Cr. P. art. 841; State v. Bosley, supra.
Nevertheless, an admonishment to the jury after an objection is sustained is allowable under La. C. Cr. P. art. 771, which provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not *919 sufficient to assure the defendant a fair trial.
In the instant case, the comment made by the witness was objected to by the state as hearsay evidence. The effect of the trial court's ruling and action was to sustain the objection and admonish the jury not to give the statement any consideration or any weight. The record supports the defendant's claim that the ruling amounted to a prohibited comment by the trial court.
This assignment is therefore without merit.
Assignment of Error Number Eight: The State of Louisiana alleged in the Bill of Information that:
Kenton Ladale Cottingham, Dewayne Terrance Weaver, and Olatunji D'Shawn Williams committed the offense of Armed Robbery ... in that (he) robbed Jessica Mayfield and Jeff Sillinger on February 20, 2001 while armed with a dangerous weapon, to wit: a gun.
According to the record neither of these persons testified at the trial of State of Louisiana v. Dewayne Terrance Weaver, No. 47,377 on the 25, 26, and 27 of March 2003. A person named Jessica McDonald testified that she was the victim of the Armed Robbery on February 20, 2001, and the State of Louisiana chose not to call Jeff Sillinger. There is no showing that Jessica McDonald is Jessica Mayfield, the victim of the robbery, and this testimony should not be used to support a conviction. Appellant requests that this supplemental assignment of error be reviewed under State v. Raymo, 419 So.2d 858 (La.1982), as "error patent on the face of the record."
The initial bill of information listed the victim's name as "Jessica Mayfield" instead of Jessica McDonald. However, an amended bill of information was filed on September 7, 2001, amending the victim's name to Jessica McDonald. Furthermore, Jessica McDonald testified at trial that she was the victim. A review of the record reveals that the amended indictment does name Jessica McDonald as a victim, who is the same person who testified at trial. Thus, this claim is groundless.
This assignment is therefore without merit.
Assignment of Error Number Four: The trial court erred by sentencing defendant to an additional five years "mandatory" sentence for Armed Robbery without having specifically alleged in the Bill of Information that defendant would be subject to a "mandatory" sentence in violation of the rule in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and La. C. Cr. P. art. 893.1-3.
The defendant was charged by amended bill of information as follows:
Kenton Ladale Cottingham, Dewayne Terrance Weaver, and Olatunji D'Shawn Williams committed the offense of Armed Robbery as set forth in R.S. 14:64, in that he robbed Jessica McDonald and Jeff Sillinger on February 20, 2001 while armed with a dangerous weapon, to wit: a gun.
When the trial court sentenced the defendant, the court made the following statement:
I wanna read you the sentences for Armed Robbery. Whoever commits the crime of Armed Robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years without benefit of parole, probation or suspension of sentence. When the dangerous weapon used in the commission of the crime of Armed Robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation or suspension of sentence. It shall *920 be served consecutively to the sentence imposed under the provision I just read to you.
The court then noted that the defendant used a firearm during the commission of the crime by placing a gun to the head of one of the victims. After considering this and other aggravating and mitigating factors, the court sentenced the defendant as follows:
The sentence of the Court is fifteen years at hard labor without benefit of probation, parole or suspension of sentence. This is in accordance with the statute and note that a firearm was used.
The defendant argues that the court intended to sentence him to ten years at hard labor with a consecutive five-year sentence imposed because of the use of a firearm under the enhanced penalty provided by La. R.S. 14:64.3.[3] Because the bill of information does not specifically allege that the firearm provision of La. R.S. 14:64.3 appliesonly that the dangerous weapon used in the armed robbery was a gundefendant contends that he is entitled to be re-sentenced to 10 years only. He contends that under the rule of Apprendi v. New Jersey, supra, and La. C. Cr. P. art 893.1-3, sentence enhancements must be expressly charged in the bill of information. In Apprendi, the Supreme Court held:
Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt.
The state contends that the 15-year sentence imposed was within the maximum statutory sentence authorized by the armed robbery statute, and that the sentence was not improperly enhanced. The use of a firearm is a proper consideration in determining an appropriate sentence in an armed robbery case. Even if the sentence was enhanced under La. R.S. 14:64.3, argues the state, the sentence does not violate Apprendi since it is within the maximum sentence for armed robbery. See State v. Walker, 01-51 (La.App. 5th Cir.5/30/01), 789 So.2d 86, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 834. Also, it argues that La. C. Cr. P. art 893.1-3 is inapplicable.
We note that the bill of information does not mention La. R.S. 64.3 although it charges that the dangerous weapon used was a gun. Since Apprendi, this court has noted the necessity of charging a defendant with La. R.S. 14:64.3 in State v. Odell, 37,194 (La.App.2d Cir.6/5/03), 850 So.2d 749, n. 1.
Louisiana Code of Criminal Procedure article 879 requires a determinate sentence. State v. Williams, 30,090 (La. App.2d Cir.12/10/97), 704 So.2d 403. In State v. Frank, XXXX-XXXX (La.App. 3rd Cir.4/6/94), 635 So.2d 634, an indeterminate sentence was found to be an illegal sentence and was noted as a patent error.
*921 Furthermore, the court in State v. Williams, XXXX-XXXX (La.App. 1st Cir.3/28/02), 815 So.2d 378, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 388, noted that R.S 14:64.3 does not provide for the imprisonment to be served at hard labor. The statute's failure to provide for hard labor may be the result of a legislative oversight. Nevertheless, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction. Any ambiguity in the substantive provisions of a criminal statute is resolved in favor of the accused and against the state. State v. Williams, supra, 815 So.2d at 382-383, citing State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274. Accordingly, the court held that imprisonment at hard labor cannot be imposed under this statute.
Because the sentence imposed by the court is indeterminate and constitutes error patent, we vacate the sentence, and remand for re-sentencing according to law for clarification of whether the defendant's sentence includes any additional punishment under La. R.S. 14:64.3. The trial court is directed to consider and comply with the mandates of Apprendi, and to consider State v. Williams, supra, regarding whether the additional penalty is to be served at hard labor. The court shall allow the defendant to file, prior to sentencing, any motions in arrest of judgment based upon the omission of an essential averment in the bill of information under La. C. Cr. P. art. 859(1) and 861.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed, but the sentence is vacated and the matter remanded for re-sentencing in accordance with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; AND REMANDED FOR RE SENTENCING.
NOTES
[1] He originally raised eight, but expressly withdrew one.
[2] People v. Negron, 220 Ill.App.3d 754, 162 Ill.Dec. 882, 580 N.E.2d 1301 (11/15/91) held that evidence that another defendant has been acquitted is admissible when the state's case against both defendants is identical.
[3] The punishment for armed robbery is found in La. R.S. 14:64B, which provides:

Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years....
An additional penalty is contained in La. R.S. 14:64.3, which was added by Acts 1999, No. 932, § 1, effective July 9, 1999. It provides in pertinent part:
A. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.